# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Abdirahman Abdi Mohamed,

        Petitioner,

v.

Jefferson Sessions, Attorney General;
John Kelly, Secretary of Department of
Homeland Security; Jason Sieving; U.S.
ICE Field Office; and Warden of Immigration
Detention Facility

        Respondents.

Civ. No. 16-3828 (SRN/BRT)

**REPORT AND RECOMMENDATION**

Abdirahman Abdi Mohamed, pro se.

Ana H. Voss, Esq., and D. Gerald Wilhelm, Esq., United States Attorney's Office, counsel for respondents.

      Petitioner Abdirahman Abdi Mohamed was previously detained on an order of removal by U.S. Immigration and Customs Enforcement ("ICE") awaiting deportation to Somalia. After sitting in jail for five months, Mohamed filed a petition for a writ of habeas corpus claiming that there was not a significant likelihood of removal in the reasonably foreseeable future and that, pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001), his continued detention was therefore unlawful. In its initial response, the government argued that Mohamed's removal was "far from impossible," but "likely" after the conclusion of Somali elections, and thus that his detention was justified.

(Doc. No. 4, Gov't Resp. 11.) Elections in Somalia came and passed, however, with no change in Mohamed's custody status for over three months.

On May 22, 2017, this Court ordered the government to file a supplemental memorandum providing an update on Mohamed's whereabouts, including whether a travel document had been issued for his departure and whether a definite timeframe had been established for his return to Somalia. (Doc. No. 8.) Three days later, Mohamed was released from ICE custody. (Doc. No. 10, Declaration of Ana H. Voss ("Voss Decl.") ¶ 3; Doc. No. 10-1, Exhibit to Voss Decl. ("Voss Ex.").) The following day, the government submitted a memorandum setting forth its position that the habeas corpus petition had become moot on account of their release of Mohamed.

Mohamed's habeas corpus petition was referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. After review, this Court concludes that habeas corpus relief is no longer available to Mohamed, as he has already been released from detention. Accordingly, it is recommended that this matter be dismissed without prejudice as moot.

**I.      Background**

Mohamed is a citizen of Somalia. (Doc. No. 1, Habeas Pet. ¶ 11.) On July 5, 2001, Mohamed was admitted to the United States as a refugee. (Doc. No. 5, Declaration of Robert Tremont ("Tremont Decl.") ¶ 1; Doc. No. 5-1, Exhibit to Tremont Decl. ("Tremont Ex.") at 4.) His status was adjusted to that of a lawful permanent resident on October 27, 2008. (Tremont Decl ¶ 2; Tremont Ex. at 4.)

In 2012, Mohamed pleaded guilty to aggravated robbery in state court and was sentenced to a 58-month term of imprisonment. *See State of Minnesota v. Mohamed*, No. 55-CR-12-3124 (Minn. Dist. Ct.); Tremont Decl. ¶ 3; Tremont Ex. at 6–11. On account of the conviction, Mohamed was ordered removed from the United States by Immigration Judge Kristin W. Olmanson on April 11, 2014. (Tremont Ex. at 21.) The Board of Immigration Appeals affirmed the order of removal on September 11, 2014. (Tremont Ex. at 24–27.) ICE took Mohamed into custody on August 13, 2015, immediately after he had completed his term of imprisonment with the Minnesota Department of Corrections. (Tremont Decl. ¶ 8.) About three months later, Mohamed was released on the finding that there was no significant likelihood of removal in the reasonably foreseeable future and that he was not a flight risk or a threat to the community. (Tremont Decl. ¶ 9; Habeas Pet. ¶ 6.)[1]

On March 22, 2016, Mohamed was found to have violated the terms of his supervised release in state court. (Tremont Decl. ¶ 10.) After serving a term of imprisonment for that violation, Mohamed was returned to ICE custody on June 8, 2016 — not on the basis that he had violated the order of supervision imposed when he was first released from ICE custody (which required, among other things, that Mohamed not violate any criminal laws), but on the grounds that there was once again a significant likelihood of removal in the reasonably foreseeable future. (Tremont Decl. ¶ 11; Tremont

---

[1] Mohamed lists the date of release as November 22, 2015, but the record reflects that he was in fact released on November 23. (Tremont Ex. at 29.) The discrepancy is not material.

Ex. at 29.) Travel documents were requested from the Somali embassy a few days later. (Tremont Decl. ¶ 12.) Three months passed without procurement of the necessary travel documents, but ICE elected to keep Mohamed in custody, not only on the finding that there remained a significant likelihood of removal in the reasonably foreseeable future, but also on the new finding, based on the prior criminal proceedings, that Mohamed "appear[ed] to be a threat to the community." (Tremont Ex. at 30.) Three months later, ICE once again refused to release Mohamed, this time solely on the basis that his removal from the United States was likely in the near future. *See* Tremont Ex. at 31 ("A travel document from the Government of Somalia is expected, therefore you are to remain in ICE custody at this time.")

In the interim, Mohamed filed his habeas petition, alleging that he was entitled to release from custody because the aggregated terms of detention imposed upon him by ICE—that is, the period of detention from August-November 2015, along with the period of detention beginning on June 8, 2016 and continuing through the date the habeas petition was filed—exceeded the 6-month presumptively reasonable period proscribed in *Zadvydas*. (Habeas Pet. ¶ 17.)[2] In response, the government argued that Mohamed's release was delayed due to the postponement of the Somali elections. (Tremont Decl. ¶

---

[2] Mohamed had been in ICE custody for about eight months on aggregate at the time the habeas corpus petition was filed, but only five of those months were consecutive. The government has not argued that Mohamed brought his *Zadvydas* claims prematurely, *see Mehighlovesky v. U.S. Dep't of Homeland Security*, No. 12-CV-0902 (RHK/JJG), 2012 WL 6878901, at *2 (D. Minn. Dec. 7, 2012) (collecting cases for proposition that claim under *Zadvydas* may be brought only after 6-month post-removal-order period of detention has concluded), and so any such argument is now waived.

16.) Mohamed maintained in his reply that this removal was not reasonably foreseeable because his request for travel documents had been pending for over six months with no response from the Somali embassy, and the government's evidence that removal was imminent consisted largely of the say-so of a single ICE officer.

The long-postponed Somali elections were finally held on February 8, 2017. *See Somalia's Mohamed Abdullahi Farmajo Chosen as President*, BBC News, http://www.bbc.com/news/world-africa-38904663 (last visited June 5, 2017). Travel documents were not forthcoming, however, because Mohamed remained in ICE custody as of May 22, 2017. That day, this Court ordered the government to provide an update within four days as to Mohamed's status in light of the long-since-passed elections in Somalia. (Doc. No. 8.) One day before this Court's deadline for response, Mohamed was released from ICE custody on an order of supervision. (Voss Ex. at 1–2, 6–8.)

## II. Analysis

### A. *Zadvydas* Framework

When an alien is ordered removed, ICE is generally expected to secure the alien's deportation within 90 days. *See* 8 U.S.C. § 1231(a)(1). During this 90-day removal period, ICE is required to detain the alien. *See* 8 U.S.C. § 1231(a)(2). If the alien is not removed during this 90-day period, then the alien is generally entitled to release, subject to conditions of supervision. *See* 8 U.S.C. § 1231(a)(3). But an alien "ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of

5

removal, may be detained beyond" the 90-day removal period. 8 U.S.C. § 1231(a)(6). Mohamed is among the group specified by statute which may, consistent with federal statute, be detained beyond the 90-day removal period. (Tremont Ex. at 24, 31.)

Section 1231(a)(6) does not, on its face, limit the amount of time that an alien may be detained after the 90-day removal period. In *Zadvydas*, however, the Supreme Court found that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689. In determining whether habeas corpus relief is appropriate for an alien detained pending removal, "the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id*. at 699.

The Supreme Court in *Zadvydas* went on to find that "it is presumptively reasonable to keep an alien subject to a final removal order in custody for a total of six months." *Bah v. Cangemi*, 489 F. Supp. 2d 905, 916 (D. Minn. 2007) (citing *Zadvydas*, 533 U.S. at 701). "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Detention beyond the 6-month period thus is not *per se* unlawful. "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable

6

future." *Id*. A detainee held longer than the 6-month period established by *Zadvydas* may seek his release through a petition for a writ of habeas corpus. *See* 28 U.S.C. § 2241(c)(3).

### B. Mootness

In his habeas corpus petition, Mohamed sought release from custody and an injunction prohibiting the government from unlawfully detaining him in the future. (Pet. 10.) At this stage in the proceedings, the Court cannot effect either form of relief. Mohamed has already been released from custody, and the government is already foreclosed under federal law from further detaining him unless he violates his release provisions or, due to changed circumstances, there again exists a significant likelihood of removal to Somalia in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(i). The government therefore argues that Mohamed's habeas corpus petition has become moot and should be dismissed on that basis.

"Article III of the United States Constitution limits the jurisdiction of the federal courts to actual, ongoing cases and controversies." *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000). If a proceeding becomes moot in the Article III sense—that is, no longer presents a case or controversy—the Court must dismiss the action for lack of jurisdiction. *See Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005) (en banc). The Eighth Circuit has previously assumed, without deciding, that a habeas corpus petition brought by an immigration detainee who has since been released from custody is *not* moot under Article III. *Id*. at 724 ("Because Ali was in custody when he filed his application for a writ of habeas corpus, his subsequent release from custody does not automatically moot

7

this appeal in the Article III sense . . . . However, we need not decide whether Ali's case is moot in the Article III sense.").[3] That said, courts of this District have frequently examined petitions brought under similar circumstances by detainees who have been released under Article III mootness,[4] and for good reason. "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. The parties must continue to have a personal stake in the outcome of the lawsuit" for that lawsuit not to become moot in the Article III sense. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quotations omitted). Where an immigration detainee is released during the pendency of habeas proceedings, it is often the case that granting the habeas corpus petition would leave the petitioner "in *precisely* the situation in which he already finds himself. Absolutely nothing would change. This is the very definition of mootness."

---

[3] In *Ali*, the Eighth Circuit concluded that the petition before it was "prudentially moot in light of the myriad of uncertainties in this case." *Ali*, 419 F.3d at 724. "Unlike Article III mootness, [prudential mootness] address[es] not the power to grant relief but the court's discretion in the exercise of that power." *Chamber of Commerce of United States of America v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980) "In some circumstances, a controversy, not actually moot, is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *Id.* Among the peculiar circumstances in *Ali* which caused the Eighth Circuit to stay its hand—not on jurisdictional, but on prudential grounds—was that the petitioner had mistakenly been released from detention and could not be located, and his ongoing failure to comply with the order of supervision assured that he would be lawfully re-detained upon his capture. *Id.* at 723.

[4] *See, e.g.*, *Lee v. Sessions*, No. 16-CV-2776 (DWF/SER), 2017 WL 1373873, at *2 (D. Minn. Mar. 9, 2017); *Gbadyu v. Lynch*, No. 16-CV-0548 (DSD/SER), 2016 WL 6818759, at *2 (D. Minn. Oct. 4, 2016); *Kargbo v. Brott*, No. 15-CV-2713 (PJS/LIB), 2016 WL 3676162, at *2 (D. Minn. July 6, 2016).

8

*Kargbo v. Brott*, No. 15-CV-2713 (PJS/LIB), 2016 WL 3676162, at *2 (D. Minn. July 6, 2016) (emphasis in original).

This is an accurate description of Mohamed's situation. Mohamed has been released from ICE custody. Although there are conditions imposed upon his release, those conditions are required by federal law and would have been imposed even had Mohamed's habeas corpus petition been granted. *Id.* at *2 (citing 8 U.S.C. § 1231(a)(3); 8 C.F.R. § 241.13(h)). As a practical matter, nothing more can be effectuated in these proceedings to change Mohamed's current situation.

A habeas petition, however, should not be dismissed as moot if "(1) secondary or collateral injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; [or] (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time." *Riley v. I.N.S.*, 310 F.3d 1253, 1256 (10th Cir. 2002) (quotation omitted). This Court has carefully considered all three of these exceptions to the mootness doctrine. None of these exceptions apply in this case.

### 1. Collateral Consequences

The collateral-consequences exception applies when there is a "concrete and continuing injury other than the now-ended incarceration or parole." *Spencer*, 523 U.S. at 7. The idiomatic example of collateral consequences is where a prisoner was incarcerated as a result of a criminal conviction and is released before his habeas corpus petition challenging that conviction is adjudicated. "[C]onvictions may entail collateral legal disadvantages in the future," *Pollard v. United States*, 352 U.S. 354, 358 (1957),

9

including not only periods of parole, supervision, or other direct and ongoing limitations on freedom, but also more indirect and remote handicaps, including that the "conviction may be used to impeach [the petitioner's] character should he choose to put it in issue at any future criminal trial," *Sibron v. New York*, 392 U.S. 40, 55–56 (1968). Accordingly, the Supreme Court has "been willing to presume that a wrongful criminal conviction has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur)." *Spencer*, 523 U.S. at 8.

By contrast, the Supreme Court has been unwilling to presume collateral consequences resulting from incarceration not stemming directly from a criminal conviction, such as where a prisoner is detained on parole violations. *Id.* at 13–14. For instance, the fact that the parole revocation could be cited to the petitioner's detriment in future legal proceedings is an insufficient "collateral consequence[]" to justify refusal to dismiss a habeas corpus petition on mootness grounds. *Id.* at 14–16. Nor is it sufficient that an inability to attack the validity of detention via habeas corpus proceedings may preclude the petitioner from bringing a civil-rights action on the basis of the illegality of that detention. *Id.* at 17 (citing *Heck v. Humphrey*, 512 U.S. 477 (1994)); *Newmy v. Johnson*, 758 F.3d 1008, 1009-12 (8th Cir. 2014).[5]

Returning to Mohamed's habeas corpus petition: There are no collateral consequences arising from the allegedly unlawful detention sufficient to justify a refusal

---

[5] Leaving aside the operation of *Heck*, it is unclear whether civil-rights claims are available to Mohamed at all, even if it were to be determined that he was detained by ICE for an excessive period of time. *See Alvarez v. U.S. Immigration and Customs Enforcement*, 818 F.3d 1194 (11th Cir. 2016).

to dismiss this matter as moot. Although Mohamed remains subject to conditions of release, those conditions of release would remain in place even if habeas corpus relief were to be granted. "[B]eing subject to release conditions and the possibility of being taken back into custody if ICE finds another country that will permanently accept him . . . are not consequences of the detentions, but consequences of the removal order" — a removal order that Mohamed cannot challenge in these proceedings. *Kargbo*, 2016 WL 3676162, at *2. In short, these proceedings cannot continue on the basis of continuing collateral consequences arising from Mohamed's detention.

### 2. Capable of Repetition but Evading Review

"[A]n exception to the mootness doctrine exists where the challenged conduct is 'capable of repetition, yet evading review.'" *Minn. Humane Society v. Clark*, 184 F.3d 795, 797 (8th Cir. 1999) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). "Under this exception, a court may hear an otherwise moot case when (1) the challenged action is of too short a duration to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id*. The doctrine applies only in "exceptional" circumstances. *Spencer*, 523 U.S. at 17 (quotation omitted).

The exception to the mootness doctrine based on activities capable of repetition but evading review does not apply unless "there is a reasonable expectation that *the same complaining party* will be subject to *the same action* again." *Minnesota Humane Society*, 184 F.3d at 797 (emphases added). Even if it is reasonable to expect that other detainees similarly situated to Mohamed will likewise be detained for longer than six months and

will also be released from detention during the pendency of their habeas corpus litigation, there is no basis for believing that Mohamed *himself* will be subject to the same action. Under 8 C.F.R. § 241.13(i), Mohamed's release from ICE custody may be revoked only in two circumstances: (1) he violates the conditions of his release, or (2) "if, *on account of changed circumstances*, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." (Emphasis added.) Thus, assuming that ICE complies with federal law, any subsequent detention of Mohamed by ICE will not be a repetition of the detention challenged in the habeas petition; "it will be a different type of detention that will be based on a different justification." *Kargbo*, 2016 WL 3676162, at *2. There is no basis at this time for finding that ICE is likely to flout § 241.13(i) and subject Mohamed to the same detention, on the same grounds, as the detention challenged in the habeas petition. Accordingly, this Court finds that the "extraordinary and narrow exception" to the mootness doctrine for actions capable of repetition but evading review does not apply. *Randolph v. Rodgers*, 170 F.3d 850, 856 n.7 (8th Cir. 1999).

### 3. Voluntary Cessation of Unlawful Activity

"It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (2000)). "In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might

12

become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)). The "heavy burden" of showing that the challenged conduct cannot be renewed after the conclusion of the litigation lies upon the party asserting mootness. *Id.* (quotation omitted).

There is no question that the government in this case voluntarily granted Mohamed the relief sought in his habeas corpus petition. Mohamed alleged that his detention was unlawful, asked to be released from that detention, and—after the passage of several months—the government voluntarily obliged. No order from the Court requiring Mohamed's release was necessary. Moreover, there is also reason from the record to believe that Mohamed was released *because of* this litigation. *See American Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 55 (1st Cir. 2013) ("The voluntary cessation doctrine does not apply when the voluntary cessation of the challenged activity occurs because of reasons unrelated to the litigation."); *accord Wall v. Wade*, 741 F.3d 492, 498 n.8 (4th Cir. 2014); *but see Aref v. Lynch*, 833 F.3d 242, 251 n.6 (D.C. Cir. 2016) (questioning whether "a finding that the cessation was undertaken because of the litigation" is necessary to invoke the voluntary-cessation doctrine). Mohamed was released from detention only one day before the government's response to this Court's May 22, 2017 order was due. (Voss Ex. at 1–2.) At that point, the government would have been unable to maintain its earlier position that the postponement of elections in Somalia was to blame for Mohamed's continuing detention, as those elections had long since passed. Perhaps most alarmingly, the checklist

13

completed by ICE officials in determining whether to release Mohamed includes a line indicating whether habeas corpus proceedings are pending. (Voss Ex. at 4.) At minimum, the inclusion of this information on the checklist suggests that a detainee who files a habeas corpus petition is more likely to be released than a detainee who does not, and thus that Mohamed's release was at least partly motivated by concerns over this litigation.[6]

As with the exception for activities capable of repetition but evading review, however, a petitioner must show not only that the opposing party voluntarily ceased performing the allegedly unlawful action, but that the petitioner *himself* is unlikely to be subjected to the same allegedly unlawful action in the future. *See Qassim v. Bush*, 466 F.3d 1073, 1075-76 (D.C. Cir. 2006). As this Court discussed above, there is no reason to believe that Mohamed himself will be subjected to the same detention in the future. *See* 8 C.F.R. § 241.13(i). In the absence of evidence suggesting that a detention of Mohamed on similar facts is reasonably likely to occur again, this Court cannot find that the voluntary-cessation exception applies.

---

[6] The government has previously admitted that judicial suggestions that a habeas corpus petition might be granted are "incorporated" into the decision whether to release a petitioner and "accelerate[]" the release process. *See Kargbo*, No. 15-CV-2713 (PJS/LIB), Doc. No. 45 at 4 (D. Minn. Apr. 18, 2016). It is therefore reasonable to believe that there is sometimes a causal relationship between the existence of federal habeas corpus litigation and compliance with *Zadvydas*, even in the absence of an express judicial finding that a detainee's incarceration is unlawful. This Court notes that nothing in *Zadvydas* premises release of an alien from detention upon the filing of a federal habeas petition. If there is no significant likelihood of removal in the reasonably foreseeable future, a detainee should be immediately released, regardless of whether the petitioner has first initiated habeas proceedings.

Only one matter merits further comment. Mohamed's petition purports to raise three grounds for relief. (Habeas Pet. 7–9.) Two of these grounds raise claims directly under *Zadvydas*, although one is presented as a statutory violation and the other as a violation of Mohamed's constitutional rights. Mohamed's third ground for relief, however, is only tangentially related to *Zadvydas*. In that claim, Mohamed alleges that ICE failed to act in a neutral and impartial manner when it elected to detain him beyond the 6-month period set forth in *Zadvydas*. (*Id*. at 9.) As presented in the habeas corpus petition, this claim is also moot because Mohamed has already received the only relief he seeks and no exception to the mootness doctrine applies. Even if the claim were not moot, however, this Court would recommend dismissal. "When immigration officials reach continued-custody decisions for aliens who have been ordered removed according to the custody-review procedures established in the Code of Federal Regulations, such aliens receive the process that is constitutionally required." *Moses v. Lynch*, No. 15-CV-4168 (PAM/JJK), 2016 WL 2636352, at *4 (D. Minn. Apr. 12, 2016). Mohamed does not allege that the review procedures employed by ICE failed to comport with the guidelines established by the Code of Federal Regulations. Therefore, he received the process to which he was due. Mohamed's procedural-due-process claim is therefore not only moot, but insufficient as a matter of law.

### C. Conclusion

Mohamed has already received the relief he sought in his habeas corpus petition, and no exception to the mootness doctrine applies. Accordingly, this Court recommends that the habeas corpus petition be dismissed without prejudice.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** this matter be **DISMISSED WITHOUT PREJUDICE** as moot.

Date: September 14, 2017

*Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).